UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAUNA WOODS, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:21-CV-01093 |
| v. | ) ) | Judge Edmond E. Chang |
| FLEETPRIDE, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Shauna Woods has filed this proposed class action against a company that distributes truck and trailer parts, FleetPride, Inc. Woods alleges that FleetPride violated the Illinois Biometric Information Privacy Act (often referred to by its acronym, BIPA). 740 ILCS 14/1, *et seq*. R. 1-1, Compl.[1] The Act prohibits private entities from collecting any "biometric identifier"—including fingerprints—from a person unless that person has consented in writing and the private entity has provided certain disclosures. 740 ILCS 14/15(b). Under Section 15(a) of the Act, collectors of biometric identifiers must develop, publicly disclose, and follow a data retention and destruction policy for the biometric information. 740 ILCS 14/15(a). Woods alleges that FleetPride violated the Act by using a clock-in, clock-out timekeeping system that relied on the collection, storage, and use of employees' fingerprints and biometric information without proper written consent and without making required disclosures.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

The suit was initially filed in state court, and FleetPride invoked diversity jurisdiction, 28 U.S.C. § 1332(a)(1), to remove the case to federal court. R. 1, Def.'s Notice of Removal ¶¶ 9–15. FleetPride has moved to stay the proceedings in anticipation of four separate decisions in other BIPA cases—each in a different court and in a different procedural posture—that FleetPride argues will materially impact the present case. R. 13, Def.'s Mot. Stay. Two of those cases have now been decided. As explained in this Opinion, the remaining two cases do not warrant a continued stay. For their part, Woods asks to sever and remand the Section 15(a) claims (that is, the data-retention policy claim) to state court for lack of subject matter jurisdiction. R. 15, Pl.'s Mot. Sever and Part. Remand. For the reasons set forth below, the motion to sever and remand is granted, and the motion to stay is denied.

## I. Background

For purposes of this motion, the Court must accept as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). FleetPride is an Alabama corporation with its principal place of business in Texas. Def.'s Notice of Removal ¶ 12; R. 1-1, Def.'s Exh. 2, Lancaster Decl. ¶¶ 4–5. The company distributes heavy-duty truck and trailer replacement parts, including through their facility in Elgin, Illinois. Lancaster Decl. ¶ 6, 7. For purposes of diversity jurisdiction, FleetPride is a citizen of Alabama and Texas. Def.'s Notice of Removal ¶ 14. Shauna Woods has worked for FleetPride since September 2019. Compl. ¶ 17.

Throughout Woods' employment, FleetPride has scanned and stored digital copies of her fingerprints. Compl. ¶ 18. Each time that Woods works a shift, she

places her finger on a fingerprint scanner. *Id*. ¶ 19. Each time she leaves a shift, she does the same. *Id*. When Woods scans her fingerprint, the technology then matches the new scan to the digital copy of her fingerprints stored in an electronic database. *Id*. The fingerprint matching technology confirms the employees' credentials and Woods can then clock in and clock out of work. *Id*. Employees' fingerprint scans are stored in an electronic database along with other personally identifying information. *Id*. ¶ 4.

Despite collecting this biometric information, FleetPride never obtained consent or a written release from Woods (or the other class members that she seeks to represent) for the collection, capture, storage, or use of their biometric data. Compl. ¶¶ 1, 4–5, 13, 20–21. Woods asserts that the average employee did not know or fully understand that FleetPride was collecting, using, or indefinitely storing their biometric information. *Id*. ¶ 14. And FleetPride never told employees why their biometric information was being collected or how long it will be stored or used, *id*. ¶¶ 15, 36, nor has FleetPride explained its biometric-data retention policy or whether it will ever permanently delete their biometric data. *Id*. ¶¶ 16, 37. In fact, Woods believes that FleetPride does not even have a biometric-data retention policy, let alone a publicly available one. *Id*. As a result of FleetPride's collection, storage, and use of the employees' biometric data—as well as FleetPride's failure to develop and publish a retention policy—Woods alleges that FleetPride violated the employees' right to maintain control over their own biometric identifiers and biometric information. *Id*. ¶¶ 37–38.

Based on these allegations, Woods filed suit against FleetPride in Illinois state court, alleging certain violations of the Illinois Biometric Privacy Act, which has come to be known as BIPA for short. *See* Compl. Specifically, Woods brought claims under two separate sections of BIPA:

- *Retention Schedule*: Section 15(a), which requires companies to maintain a public retention and destruction schedule before collecting biometric data, 740 ILCS 14/15(a); and

- *Consent to Collect*: Section 15(b), which requires companies to obtain written consent before collecting biometric data, 740 ILCS 14/15(b).

*Id.* ¶¶ 15–16. In addition, Woods seeks to represent a class of other Illinois FleetPride employees who were required to scan their fingerprints into the biometric time-clock system. *Id.* ¶¶ 25–29. The proposed class is alleged to be in the hundreds of members. *Id.* ¶ 26.

In February 2021, FleetPride removed the case to federal court, alleging diversity jurisdiction, 28 U.S.C. § 1332(a), as the basis for subject matter jurisdiction. Def.'s Notice of Removal. Specifically, FleetPride alleges that diversity exists among the parties and the amount in controversy exceeds $75,000. *Id.* ¶¶ 15, 16–21. On the amount-in-controversy question, FleetPride notes that Woods alleges BIPA violations for every shift that she has worked—368 shifts in total. *Id.* ¶ 19. Given Woods' requests for statutory damages in the Complaint, FleetPride offered two separate damages calculations, one using $1,000 per violation and one using $5,000 per violation. In other words, 368 multiplied by either $1,000 or $5,000 is easily more than $75,000. *Id.* ¶ 20.

4

FleetPride has also moved to stay the case pending decisions in (1) *McDonald v. Symphony Bronzeville Park LLC*, 174 N.E.3d 578 (Ill. App. Ct. 2020) (appeal granted *McDonald v. Symphony Bronzeville Park, LLC*, 163 N.E.3d 746 (Ill. 2021)); (2) *Tims v. Black Horse Carriers, Inc.*, __N.E.3d__, 2021 WL 4243310 (Ill. App. Ct. 2021), appeal allowed, 2022 WL 808656 (Ill. Jan. 26, 2022); (3) *Marion v. Ring Container Technologies, LLC*, No. 3-20-0184 (Ill. App. Ct.); and (4) the interlocutory appeal in *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604 (N.D. Ill. 2020). FleetPride argues that the decisions in these cases will materially impact the issues in this case. *See* Def.'s Mot. Stay. Woods agreed to a stay pending the decision in *Tims* (which has since been decided, as discussed below), but objected to a stay pending decision in the other three cases. R. 16, Pl.'s Reply in Opp. Mot. Stay.

In response to FleetPride's removal of this case to federal court, Woods filed a motion to sever and remand to state court the claim brought under BIPA Section 15(a), which covers the retention-policy claim (as distinct from the consent claim). Pl.'s Mot. Sever and Part. Remand. Woods argues that the Section 15(a) retention-policy claim must be severed and remanded because she lacks Article III standing to pursue it in federal court, so there is no subject matter jurisdiction over that claim here. *Id.* at 4.

## II. Legal Standards

Removal of a case to federal court is generally governed by 28 U.S.C. § 1441. Generally speaking, so long as a case could have been filed in federal court, the case may be removed. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

(1987); *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013). And, as always, "subject-matter jurisdiction is the first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Collier v. SP Plus Corporation*, 889 F.3d 894, 895 (7th Cir. 2018) (per curiam) (explaining that remand is required when jurisdiction is lacking). "[T]he party seeking removal … bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). So in removal cases such as this, the defendant bears the burden of showing that the plaintiff had Article III standing at the time of removal. *Collier*, 889 F.3d at 896. When determining whether a defendant has met this burden, the Seventh Circuit has cautioned that "[c]ourts should interpret the removal statute narrowly," *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009), and resolve doubts about removal in favor of the plaintiffs' choice of forum in state court, *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

On the motion to stay, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The parties and issues in two suits need not be identical for a court to stay proceedings in one suit pending a decision in another. *See id*. District Courts may consider a variety of factors in deciding whether to grant a stay, *Depuy Synthes Sales, Inc. v. Orthola, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020), and in

this jurisdiction courts often look to "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (cleaned up).[2]

### III. Analysis

### A. Jurisdiction

As the party invoking federal jurisdiction, FleetPride bears the burden of establishing that federal jurisdiction applied at the time of removal. *Collier*, 889 F.3d at 896 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)) ("The party invoking federal jurisdiction bears the burden of establishing" Article III standing). Plaintiffs in federal court have Article III standing to sue if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (citing *Lujan*, 504 U.S. at 560). A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III. *Id*. at 1549; *see also Collier*, 889 F.3d at 896 (plaintiff must have "suffered an injury beyond a

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

statutory violation"). "Instead, the plaintiff must show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (cleaned up).

Here, the heart of the jurisdictional dispute is over the nature and concreteness of injuries for the alleged violation of Section 15(a) of the Biometric Information Privacy Act. The Act as a whole was the Illinois General Assembly's response to the expanding use of biometrics "in the business and security screening sectors" as Chicago and other parts of Illinois became "pilot testing sites for new applications of biometric-facilitated financial transactions." 740 ILCS 14/5(a), (b). The legislative findings acknowledged that the "full ramifications of biometric technology are not fully known," but nonetheless noted that the immutability of biometric information means that once that type of information is compromised—unlike Social Security numbers and other personal identifiers—"the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id*. § 14/5(c). Given the consequences of biometric-identity theft, the General Assembly found that the "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id*. § 14/5(g).

To implement those goals, Section 15(b) of the Act prohibits private entities from collecting, capturing, or otherwise obtaining a person's biometric information without informed written consent. 740 ILCS 14/15(b). Section 15(a) requires private

entities that possess biometric information to develop, publicly disclose, and comply with a data retention schedule, including providing for the permanent destruction of biometric information after its initial purpose is satisfied, but in no event later than three years from the person's last interaction with the entity. *Id*. § 14/5(a).

In moving to partially remand, Woods argues that there is no Article III "injury in fact" for the retention-policy claim under Section 15(a) of the Act.[3] Pl.'s Mot. Sever and Part. Remand at 2, 4. The Seventh Circuit has issued two particularly important decisions addressing Article III standing under BIPA. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146 (7th Cir. 2020). *Bryant* held that plaintiffs suing under Section 15(b) (the informed-consent provision) generally do meet the requirements for Article III standing, because the deprivation of the right to make informed choices about inherently sensitive biometric information is a concrete harm (akin to a privacy invasion). 958 F.3d at 626. On the retention-policy provision, which is the relevant provision here (Section 15(a) of the Act), the opinion narrowly held that the injury-in-fact requirement is not met if a person merely complains that the information collector failed to publicly disclose the policy. *Id*. The Seventh Circuit reasoned that Bryant had alleged only that a *generalized* duty of disclosure to the public had been violated, with no accompanying particularized harm to Bryant. *Id*. ("[T]he duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects.").

---

[3]Woods does not dispute that Article III standing applies to the Section 15(b) claims. *See* R. 15, Pl.'s Mot. Sever and Remand.

But later the Seventh Circuit, in *Fox*, explained that *Bryant* made no broad statement on whether *violations* of the retention-policy requirement of Section 15(a) satisfy the injury-in-fact element of standing. *Fox,* 980 F.3d at 1154. In *Fox*, the Seventh Circuit emphasized that *Bryant* considered *only* the theory invoked there—a violation of the generalized duty to *publicly disclose* the retention policy—"and did *not* address other provisions" in Section 15(a). *Id.* (emphasis in original). *Fox* held that, moving beyond the general duty to publicly disclose a retention policy, an injury in fact does arise from violations of the data-retention requirements themselves. *Id.* The Seventh Circuit explained that an "unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does" and thus is "as concrete and particularized an injury" as violations of Section 15(b). *Id.* at 1154.

The Section 15(a) claim in this case mirrors *Bryant*, not *Fox*. Woods has alleged a mere *generalized* harm arising from the retention-policy violation. In particular, Woods alleges that FleetPride's failure to *publish* a data retention schedule and destruction policy violates Section 15(a). Compl. ¶ 37. This is not an issue of compliance beyond publication, and that makes all the difference.

In response, FleetPride says that although Woods claims to allege only a procedural data-retention violation, the contents of the Complaint say otherwise. R. 19, Def.'s Resp. To make this argument, FleetPride points to two parts of the Complaint. FleetPride first cites Woods' allegation that the company indefinitely stores her fingerprints in an online database. *Id.* at 5. Next, the company highlights that part of the requested injunctive relief in this case is for FleetPride to destroy any of Woods'

biometric data they currently have in electronic storage. *Id*. According to FleetPride, the allegation of indefinite storage combined with Woods' requested injunctive relief means that Woods actually pleads unlawful retention of her biometric data. And so, the defense argument goes, Woods' Section 15(a) claim alleges an injury in fact and this Court has jurisdiction.

But FleetPride's characterization of the Complaint is flawed. On the first point, the allegations that specifically refer to the Section 15(a) claim premise the claim only on the failure to publish. Compl. ¶ 4 ("In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of BIPA, Defendant is actively collecting, storing, and using—without providing notice, obtaining informed written consent or *publishing* data retention policies …") (emphasis added); *id*. ¶ 13 ("Defendant's failure to *provide* a *publicly* available written policy regarding their schedule and guidelines for the retention and permanent destruction … also violates § 15(a) of BIPA") (emphases added); *id*. ¶ 16 ("In direct violation of § 15(a) of BIPA, Defendant does not have written, *publicly* available policies identifying their retention schedules …") (emphasis added); *id*. ¶ 37 (citing § 15(a), "Defendant does not *publicly provide* a retention schedule …"). Woods correctly points out that the underlying Complaint makes no suggestion that FleetPride failed to destroy her biometric data in violation of a retention policy. Pl.'s Mot. Sever and Part. Remand at 3; Compl. ¶ 13. Indeed, there is no publicly available retention policy. Compl. ¶ 37. With regard to Woods' request for injunctive relief in the form of destruction of the biometric information, that request logically flows from the lack of consent to obtaining the fingerprints in the first place.

At bottom, then, the Section 15(a) claim hinges only on the failure to publish a retention and destruction policy. That is a generalized failure to disclose a retention policy; it is not an allegation that FleetPride has failed to comply with a retention policy. *Bryant* says that a violation of that sort does not qualify as the type of injury in fact needed for Article III standing. 958 F.3d at 626. So the Court does not have subject matter jurisdiction over the Section 15(a) retention-policy claims. The motion to sever the Section 15(a) claim and to partially remand is granted.

## B. Motion to Stay

Turning to the motion to stay, FleetPride moved to stay this case in light of four appeals that were pending at the time of the filing of FleetPride's motion. R. 13, Def.'s Mot. to Stay. FleetPride relied on four cases, arguing that the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*, the Illinois Appellate Court First District's decision in *Tims v. Black Horse Carriers, Inc.*, the Illinois Appellate Court Third District's decision in *Marion v. Ring Container Technologies, LLC*, and the Seventh Circuit's decision in *Cothron v. White Castle System, Inc.* will materially impact the issues in the present case. Woods did not oppose a stay based on the decision that was then-pending in *Tims*, but did oppose a stay pending the outcomes in *Marion*, *McDonald*, and *White Castle*. Pl.'s Reply in Opp. Mot. to Stay at 2. Since the filing of FleetPride's motion, decisions have been issued in two cases: *Tims*, — N.E.3d —, 2021 WL 4243310 (Ill. App. Ct. 2021),[4] and *McDonald*, — N.E.3d —, 2022 WL 318649 (Ill. 2022). And the Seventh Circuit has certified the

---

[4]The Illinois Supreme Court has also since granted leave for appeal in *Tims*. 2022 WL 808656.

question of state law in *Cothron* to the Illinois Supreme Court, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021). As explained next, given that only *Marion* and *Cothron* remain pending, a stay at this point is not warranted and so the motion is denied. The Court addresses each case in turn.

### 1. Illinois Workers' Compensation Act

First up is *McDonald* and the issue of whether the exclusivity provisions of the Illinois Workers' Compensation Act preempt BIPA claims. *McDonald v. Symphony Bronzeville Park*, LLC, 2022 WL 318649, at *1. At the time of the filing of FleetPride's motion to stay, the Illinois Appellate Court had decided that the Workers' Compensation Act does not preempt BIPA claims in the employment context, but the Illinois Supreme Court granted a petition for leave to appeal that decision. *See McDonald v. Symphony Bronzeville Park*, 174 N.E.3d 578, 587 ("[T]he exclusivity provisions of the Compensation Act do not bar a claim for statutory, liquidated damages, where an employer is alleged to have violated an employee's statutory privacy rights under the Privacy Act, as such a claim is simply not compensable under the Compensation Act.").[5] FleetPride argued that a decision from the Illinois Supreme Court that BIPA claims are preempted by the Workers' Compensation Act would be dispositive in this

---

[5]The district court in *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 615–16 (N.D. Ill. 2020), reviewed state and federal cases establishing that courts have "unanimously rejected" the argument that the Workers' Compensation Act preempts BIPA claims: *see, e.g.*, *Treadwell v. Power Solutions Int'l, Inc.*, 427 F. Supp.3d 984, 993 (N.D. Ill. 2019) (suggesting Illinois Supreme Court would find [BIPA] injuries not compensable under the Workers' Compensation Act); *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) (agreeing with *Treadwell*'s holding and reasoning); *Mintun v. Kenco Logistics Servs. LLC*, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020) (predicting that the state appellate court is unlikely to rule that the Workers' Compensation Act preempts BIPA).

case. Def.'s Mot. to Stay at 2, 4. But Illinois' highest court has now agreed with the intermediary appellate court that BIPA violations are akin to privacy-right violations and are not the type of injuries addressed by the Workers' Compensation Act. *McDonald*, 2022 WL 318649, at *9. The voice of the Illinois Supreme Court binds the Court on this question of state law. *See In re Air Crash Disaster near Chi.*, 644 F.2d 594, 606 (7th Cir. 1981). The argument to stay the case based on *McDonald* is now moot and *McDonald* forecloses any argument that Woods' BIPA claims are preempted by the Workers' Compensation Act.

### 2. Statute of Limitations

In support of its motion to stay, FleetPride also pointed to *Tims* and *Marion*— two cases in the Illinois Appellate Courts addressing the statute of limitations for BIPA claims. The plaintiffs in *Tims* allege that their employer, Black Horse Carriers, Inc., collected, stored, used, and disseminated their biometric data through its fingerprint-timekeeping technology. *Tims*, 2021 WL 4243310, at *1. By now, this should sound familiar. The *Tims* plaintiffs alleged violations of Sections 15(a), (b), and (d) of BIPA. *Id.* Because BIPA's statutory text does not include a provision on the applicable statute of limitations, the courts have been tasked with interpreting the appropriate period. The issue in *Tims* is whether a one or five-year limitations period applies to the alleged BIPA violations—in *Marion*, the parties have also presented the possibility of a two-year limitations period. At the time of briefing this stay motion, the Illinois Appellate Court (specifically its First District) had not yet issued its decision in *Tims*. The Illinois Appellate Court has since done so, and because the Illinois

Supreme Court has not yet decided the applicable statute of limitations, this Court will follow *Tims* (absent persuasive reasons that the Illinois Supreme Court would decide differently). *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). Relevant to the claims at issue here, *Tims* determined that BIPA claims under Sections 15(a) and (b) are subject to the five-year limitations period set by 735 ILCS 5/13-205. *Tims*, 2021 WL 4243310, at *6. The appellate court reasoned that although the duties under Sections 15(a) and 15(b) concern privacy, actions brought under these sections do *not* require allegations of publication or disclosure, so they are not actions for "publication of matter violating the right of privacy," which are the category of cases covered by the short limitations period in Section 13-201. *Id.* at *5. Although *Tims* has been decided, the Third District of the Illinois Appellate Court still has *Marion* before it for consideration. It is possible that *Marion* will come out differently and create a district split, but the mere possibility of a split is not enough by itself to warrant a stay here, especially given the persuasive reasoning in *Tims*.

### 3. Claim Accrual

Finally, FleetPride relies on the pendency of *Cothron v. White Castle Sys., Inc.*, which at the time of Defendant's filing was pending before the Seventh Circuit as an interlocutory appeal. Def.'s Mot. to Stay at 3. Just as FleetPride takes scans of Woods' fingerprints for timekeeping purposes, so too did White Castle scan its employees' fingerprints. *Cothron*, 20 F.4th at 1158. The operative question in *Cothron* is whether the alleged BIPA violations accrue only the *first* time an employee scans their

fingerprints or whether each subsequent, *separate* fingerprint scan constitutes a separate violation. *Id.* at 1158–59. Put another way, does a claim accrue only on the date of the first biometric scan, or does the statute of limitations begin to run separately for each scan? Given that this is question of Illinois state law and implicates "state accrual principles as applied to this novel state statute," *id.*, the Seventh Circuit has certified this question to the Illinois Supreme Court. Although the question in *Cothron* was at a different procedural stage when FleetPride filed its motion to stay, the Illinois Supreme Court is now set to answer the certified question. *See* Notice from the Supreme Court of Illinois, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021) (No. 20-3202 at Entry 77). The issue as it has been presented to the Illinois Supreme Court does squarely apply to Woods' BIPA allegations, and the ruling on BIPA claim accrual will bind this Court. FleetPride notes that the scope of the potential class, the number of underlying allegations, and the extent of possible damages could vary depending on the Illinois Supreme Court's decision on BIPA claim accrual. Def.'s Mot. Stay at 4.

All of that is true, but the potential for the scope of this particular case to change does not justify completely halting the case and delaying discovery. Even absent a multiple-accrual theory for each separate scan, this case has substantial stakes in play. Woods estimates a class size in the hundreds, Compl. ¶ 26, and given the statutory damages of $1,000 for even non-willful violations, the potential damages are significant. It is true that both sides probably do want to know the answer to the multiple-accrual question in *Cothron* before resolving the case *completely*. But that is

16

not a reason to get delay discovery in its entirety. Instead, it is best to move forward with discovery on the merits of Woods' individual claim and on the propriety of class certification now, and thus be in an advanced position to consider the impact of *Cothron* when it is decided. The motion to stay is denied.

## IV. Conclusion

FleetPride's motion to stay is denied. Woods' motion to sever and remand the Section 15(a) retention-policy claim is granted. The Section 15(a) claim is remanded to the Circuit Court of Cook County. The parties shall confer on a proposed discovery schedule for the Section 15(b) informed-consent claim and file a joint status report on April 14, 2022. The tracking status hearing of April 1, 2022, is reset to April 22, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the status report and set a schedule from there.

ENTERED:

          s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2022